# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SETH ROGERS, individually and as<br>Father and Next Friend of S.W.D.R., a Minor,<br><br>*Plaintiffs,*<br><br>*v.*<br><br><br>SUMNER COUNTY, TENNESSEE;<br>SUMNER COUNTY SHERIFF'S OFFICE;<br>SHERIFF ERIC CRADDOCK, in his<br>official and individual capacities;<br>DETECTIVE BRANDON CARTER, in his<br>official and individual capacities;<br>JOHN and JANE DOES 1–10,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1. This civil rights action arises from the Sumner County Sheriff's Office's ("SCSO") deliberate indifference to the disappearance of S.W.D.R. Wayne Drake Rogers ("Minor Child"), a fifteen-year-old child with Autism Spectrum Disorder, Severe Combined Type ADHD, and 6Q 27 Chromosome Deletion Syndrome, who vanished from his mother and stepfather's home in Hendersonville, Tennessee on February 26, 2024.

2. S.W.D.R. is not an ordinary missing child. He is a profoundly vulnerable minor with multiple documented disabilities, a history of sexual abuse that had been reported to and investigated by the Tennessee Department of Children's Services ("DCS"), and a home life that DCS's own records show was marked by physical abuse, emotional degradation, and a stepfather

whom neighbors reported "hated the child and wanted the child to die." DCS had formally determined that S.W.D.R. was "at serious or imminent risk of removal from their home."

3. Despite all of this context—which was known or readily available to law enforcement through the DCS records, the DCS Child Protective Investigative Team ("CPIT") proceedings in which SCSO participated, and the detective assigned to the DCS cases—the SCSO investigation into S.W.D.R.'s disappearance was inadequate, negligent, and ultimately abandoned. The SCSO failed to secure the scene, failed to verify the stepfather's alibi, failed to investigate why surveillance cameras at the home were not working, scaled back the search after approximately one week, assigned only a single detective to the case, stopped communicating with S.W.D.R.'s father, Seth Rogers, approximately eighteen (18) months ago, and has held no press conferences since March 2024.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Supplemental jurisdiction over state-law claims exists under 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this District is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

7. Plaintiff, Seth Rogers ("ROGERS"), is S.W.D.R.'s biological father. He resides in Clarksville, Tennessee. He brings this action individually and as father and next friend of S.W.D.R..

8. Defendant Sumner County, Tennessee is a municipal entity responsible for the operation of the SCSO and can be sued under _Monell v. Dep't of Soc. Servs._, 436 U.S. 658 (1978), for constitutional violations resulting from its official policies, customs, and practices.

2

9. The Sumner County Sheriff's Office ("SCSO") is a law enforcement agency organized and existing under the laws of the State of Tennessee, operating within and serving Sumner County, Tennessee. The SCSO is a governmental entity responsible for providing law enforcement services, conducting criminal investigations, and responding to reports of missing persons within its territorial jurisdiction. At all times relevant to this Complaint, the SCSO, through its agents, servants, employees, and officers acting within the course and scope of their employment, was responsible for investigating the disappearance of S.W.D.R. and was subject to the duties, obligations, and standards imposed by federal and Tennessee law governing law enforcement conduct.

10. Defendant Sheriff Eric Craddock ("CRADDOCK") is the duly elected Sheriff of Sumner County. He is the final policymaker for the SCSO with respect to law enforcement operations, including the investigation of missing persons cases. He is sued in both his official and individual capacities.

11. Defendant Detective Brandon Carter ("CARTER") is the sole detective assigned to S.W.D.R.'s missing person investigation. CARTER suggested a meeting with ROGERS approximately eighteen (18) months ago, ROGERS agreed to meet the following week, and CARTER never responded or contacted ROGERS again. CARTER is sued in both his official and individual capacities.

12. Defendants John and Jane Does 1–10 are SCSO officers, supervisors, and officials whose identities are presently unknown, but who participated in or had supervisory responsibility over the investigation of S.W.D.R.'s disappearance. Plaintiffs will amend this Complaint to identify these Defendants when their identities are ascertained.

## FACTUAL ALLEGATIONS

**A. S.W.D.R.'s History of Abuse and Vulnerability Were Known to Law Enforcement**

3

13. S.W.D.R. ("Minor Child") was fifteen years old at the time of his disappearance. S.W.D.R. was a profoundly vulnerable child requiring the highest level of investigative urgency.

14. S.W.D.R. was diagnosed with Autism Spectrum Disorder, Severe Combined Type ADHD, and 6Q 27 Chromosome Deletion Syndrome. He had an Individualized Education Plan ("IEP") and a Section 504 Plan requiring his school to provide him with accommodations because he was a student with disabilities. S.W.D.R. was in the behavioral program at his school, received therapy three (3) times per week through Mental Health Cooperative, was on Concerta, saw a neurologist at Vanderbilt, and was scheduled to begin ABA therapy at the time of his disappearance. His therapist reported that, as a consequence of prior sexual abuse, S.W.D.R. was "sexually aggressive" and suffered "frequent bathroom accidents." Law enforcement reported that S.W.D.R. had "some homicidal thoughts."

15. Before S.W.D.R. disappeared, the SCSO had direct knowledge of and involvement in S.W.D.R.'s situation through its participation in the DCS Child Protective Investigative Team ("CPIT"). The CPIT included the SCSO, Juvenile Court, Ashley's Place Child Advocacy Center, and Assistant District Attorney Jenni Smith. On November 3, 2022, and again in May 2023, the SCSO participated in CPIT proceedings regarding S.W.D.R.'s DCS cases, and a detective was assigned to the case through CPIT.

16. Through the CPIT proceedings and the DCS records, law enforcement knew or should have known the following about S.W.D.R.:

    a) S.W.D.R. had been sexually abused by a peer in California over a period of weeks, which included forced oral and anal penetration;

    b) S.W.D.R. was afraid of his stepfather Christopher Proudfoot ("PROUDFOOT") and feared being "hurt" if his stepfather found out about the sexual abuse;

    c) Proudfoot admitted to DCS that he "whacked" S.W.D.R. in the belly;

4

d)  Neighbors reported that Proudfoot "hated the child and wanted the child to die;"

e)  S.W.D.R.'s grandmother reported the stepfather "often called S.W.D.R. names and would degrade him;"

f)  S.W.D.R.'s therapist reported he was "sexually aggressive" and law enforcement itself reported he had "some homicidal thoughts;"

g)  DCS determined S.W.D.R. was "at serious or imminent risk of removal from [PROUDFOOT's] home" under the Title IV-E Candidacy Program[1];

h)  S.W.D.R. had multiple diagnosed disabilities including autism, ADHD, and a chromosomal deletion; and

i)  S.W.D.R. had never left the home alone before.

17. This information was critical context for any investigation into S.W.D.R.'s disappearance. It pointed directly at the household as the primary focus of investigation and at PROUDFOOT as a person of significant interest. The SCSO's failure to treat this information with appropriate urgency constitutes deliberate indifference.

**B.  S.W.D.R.'s Disappearance and SCSO's Initial Response**

18. On February 26, 2024, S.W.D.R.'s mother, Katie Proudfoot, reported that S.W.D.R. "left the home on his own and his whereabouts are unknown" and that "S.W.D.R. has never left the home before alone." Given S.W.D.R.'s neurodivergence, his developmental disabilities, and the documented history of abuse in the home, this report should have triggered the most intensive investigative response possible.

---

[1] This program is also known as the Family First Prevention Services Act ("FFPSA"). FFPSA provides funding for time-limited prevention services, including mental health, substance abuse, and in-home parent skill-based programs, for children who are candidates for foster care and their parents and caregiving kin.

5

19. On or about February 27, 2024, an AMBER Alert was issued by the Tennessee Bureau of Investigations ("TBI"). The SCSO initiated a search that, at the beginning, involved significant resources, including community volunteers and search teams.

20. However, the initial response was marred by critical failures. The SCSO failed to secure the Proudfoot home and allowed reporters and family members, including S.W.D.R.'s biological father, Seth Rogers ("ROGERS"), to enter the home before it was properly processed as a crime scene. The SCSO failed to verify PROUDFOOT's alibi that he was approximately three (3) hours away at the time of S.W.D.R.'s disappearance.

21. Additionally, the SCSO failed to investigate why the surveillance cameras at the Proudfoot home were reportedly not working on the day of S.W.D.R.'s disappearance. The fact that the cameras were offline, and that there was no investigation as to why and when the cameras were not functioning, should have been a significant cause of suspicion and point of through investigation, because, upon information and belief, Katie Proudfoot installs and operates security cameras for a living.

**C. SCSO's Abandonment of the Investigation**

22. After approximately one (1) week, the SCSO scaled back its physical search for S.W.D.R. and shifted to what it characterized as the "investigative side." Only one detective— Detective Brandon Carter ("CARTER") —was assigned to the case.

23. The SCSO held a singular press conference in or around April 3, 2024. No public updates were provided. No reward was offered. No additional resources were deployed. Law enforcement stopped searching for S.W.D.R..

24. ROGERS attempted to stay in contact with CARTER and to provide information from the public, including tips he received through his own outreach efforts. CARTER failed to follow up on the tips ROGERS provided.

6

25. One such important tip that, upon information and belief, was not pursued came from one of the nurses that cared for S.W.D.R. at his doctor's office. Upon information and belief, this nurse reported that on Friday February 23, 2024, Katie preemptively cancelled S.W.D.R.'s doctor's appointment scheduled for the following week, just at day or so after his disappearance. The nurse stated that this was uncommon, and in hindsight concerning, as S.W.D.R. was always present for his appointments, which were frequent and ongoing.

26. Approximately eighteen (18) months before the date of this Complaint, CARTER suggested meeting with ROGERS. ROGERS agreed and proposed meeting the following week. CARTER never responded. No further communication from the SCSO has been received by ROGERS. The TBI also told ROGERS they would call back but never did.

27. This eighteen-month communication blackout—during which a disabled child remained missing and unaccounted for—is itself evidence of deliberate indifference.

28. S.W.D.R.'s case was not allocated the resources or attention it deserved. S.W.D.R. was assigned one detective. Law enforcement held a single press conference. They made no request for FBI involvement, deployed no advanced forensics. Worse yet, law enforcement refused to accept leads from the public, much less to follow up on them. And they completely abandoned all communication with the S.W.D.R.'s father.

29. Tennessee ranks seventh nationally in missing persons cases, with 991 active cases as of mid-2025 and 924 unresolved cases in the NamUs database as of January 2025. The SCSO's failures are not isolated but reflect systemic deficiencies in how Tennessee law enforcement handles missing persons cases.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS

*Fourteenth Amendment –Deliberate Indifference and State Created Danger*

7

**(Against All Defendants)**

30. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

31. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." In child welfare cases, the applicable standard for substantive due process liability under 42 U.S.C. § 1983 is deliberate indifference. That is, whether the state actor knew of and disregarded a substantial risk of serious harm to the plaintiff. *Patel v. Kent Sch. Dist.,* 648 F.3d 965 (9th Cir. 2011).

32. Under the state-created danger doctrine, a state actor may be held liable under § 1983 when the state's affirmative actions create or increase the danger to an individual. *DeShaney v. Winnebago County Dep't of Soc. Servs.* (1989) 489 U.S. 189, 201, fn. 9.

33. S.W.D.R., as a missing child with documented disabilities and a known history of abuse, had a liberty interest in his personal security protected by the Fourteenth Amendment. ROGERS has a protected liberty interest in the care, custody, and companionship of his son.

34. This claim is brought on behalf of S.W.D.R. through his father and next friend, ROGERS. The state-created danger doctrine requires that the state's own affirmative conduct created or increased the plaintiff's exposure to danger. *Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006). Defendants' affirmative acts that created or increased the danger to S.W.D.R. include: (a) knowing S.W.D.R.'s history of sexual abuse that had been reported to and investigated by the DCS; (b) knowing that S.W.D.R. had a home life that DCS's own records show was marked by physical abuse, emotional degradation, and a stepfather whom neighbors reported "hated the child and wanted the child to die;" and (c) failing to take any action.

35. Defendants, acting under color of state law, were deliberately indifferent to S.W.D.R.'s disappearance. This deliberate indifference is evidenced by: (a) the failure to secure the

scene; (b) the failure to verify PROUDFOOT's alibi; (c) the failure to investigate the non-functioning surveillance cameras; (d) the assignment of only one detective; (e) the cessation of press conferences after March 2024; (f) the failure to follow up on tips; (g) the eighteen-month communication blackout with ROGERS; and (h) the failure to deploy resources commensurate with the known risk factors.

36. Defendants knew or should have known of the extraordinary risk factors in this case through their participation in the CPIT proceedings, the DCS records, and the circumstances of S.W.D.R.'s disappearance. Their failure to act with urgency in light of these known risks constitutes conduct that shocks the conscience.

37. As a direct and proximate result of the Defendants' deliberate indifference and affirmative acts creating danger, S.W.D.R. remains a highly at-risk missing youth.

38. Plaintiffs are entitled to compensatory damages for the continuing deprivation of S.W.D.R.'s liberty and ROGERS's familial association, punitive damages against the individual Defendants for conduct evidencing reckless or callous indifference to federally protected rights, injunctive relief directing the SCSO to immediately reopen and actively prosecute the investigation with adequate resources, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – *MONELL* DOCTRINE

### (Against Defendant Sumner County)

39. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

40. Pursuant to the United States Supreme Court's decision in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff can hold a municipal or local

9

government entity liable for constitutional violations caused by its policies, customs, or practices.

41. Upon information and belief, Sumner County, through the SCSO, maintained official policies, customs, and practices that were the moving force behind the constitutional violations, including: (a) a custom of under-resourcing missing persons investigations; (b) a policy or practice of failing to maintain communication with families of missing persons; (c) a custom of failing to coordinate with DCS and other agencies regarding known risk factors; and (d) a practice of effectively abandoning investigations without resolution.

42. These policies and customs reflect deliberate choices by Sumner County's final policymaker, Defendant CRADDOCK, regarding the allocation of investigative resources, the prioritization of missing persons cases, the scale of the search, the assignment of personnel, and the cessation of family communication are attributable to Sumner County as official policy.

43. Sumner County's policies, customs, and practices were the moving force behind the constitutional violations described herein.

44. As a direct and proximate result of Sumner County's deliberate policies, customs, or practices, S.W.D.R. remains a highly at-risk missing youth.

45. Plaintiffs are entitled to compensatory damages for the continuing deprivation of S.W.D.R.'s liberty and ROGERS's familial association, punitive damages against the individual Defendants for conduct evidencing reckless or callous indifference to federally protected rights, injunctive relief directing the SCSO to immediately reopen and actively prosecute the investigation with adequate resources, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 - FAILURE TO TRAIN AND SUPERVISE**

**(Against Defendants Sumner County and Sheriff Craddock)**

46. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

47. Supervisory liability attaches under 42 U.S.C. § 1983 when a supervisor's failure to train or supervise subordinates amounts to deliberate indifference to the rights of persons those subordinates encounter. The inadequacy in training must be closely related to, and the actual cause of, the ultimate constitutional injury.

48. As set forth herein, Defendants' conduct violated S.W.D.R.'s constitutionally protected liberty interest in personal security under the Fourteenth Amendment, and ROGERS's protected liberty interest in the care, custody, and companionship of his son.

49. Upon information and belief, Sumner County and Sheriff Craddock failed to provide SCSO officers and detectives with adequate training in: (a) the investigation of missing persons cases involving disabled and neurodivergent children; (b) the assessment and prioritization of cases presenting known abuse risk factors, including prior DCS involvement; (c) the identification and preservation of crime scenes in the context of missing children investigations; (d) the proper verification of alibi information from individuals in the missing child's household; (e) coordination with other agencies, including DCS, the TBI, and the FBI, in cases involving high-risk missing children; (f) the deployment and maintenance of investigative resources sufficient for the duration of an unresolved missing persons case; and (g) maintaining required communication with the families of missing persons throughout the investigation.

50. The need for such training was obvious. Law enforcement officers investigating the disappearance of a disabled minor from a home marked by documented physical and sexual

11

abuse, active DCS involvement, and a household member identified by neighbors as harboring lethal animosity toward the child are placed squarely in a situation where the absence of specialized training in vulnerable-victim investigations will predictably result in constitutional harm. The failure to prepare officers for precisely this scenario – one that the SCSO had constructive, if not actual, knowledge was likely to arise, given SCSO's own participation in the CPIT proceedings concerning S.W.D.R. – constitutes deliberate indifference.

51. CRADDOCK, as the final policymaker for the SCSO, is individually liable for his failure to supervise SCSO personnel, including CARTER, in the investigation of S.W.D.R.'s disappearance. CRADDOCK knew or should have known that assigning a single detective to a high-risk missing child investigation and allowing that investigation to go dormant for over eighteen months without intervention constituted a supervisory failure of constitutional dimension. His deliberate choice to retain that approach, and his failure to intervene as the investigation stagnated and communication with the child's family was abandoned, reflects the conscious disregard of a known risk required to establish supervisory liability.

52. Had SCSO personnel been trained in vulnerable-victim investigation protocols, CARTER been supervised, and the SCSO been equipped with proper procedures for high-risk missing persons cases, the investigative failures catalogued herein would not have occurred. These omissions are not incidental; they are the foreseeable and predictable product of a department that sent its detective into a constitutionally sensitive investigation without the tools to conduct it.

53. As a direct and proximate result of Defendants' failure to train and supervise, S.W.D.R. remains a highly at-risk missing child, and ROGERS has been deprived of his constitutionally protected relationship with his son. Plaintiffs are entitled to compensatory

12

damages, punitive damages against CRADDOCK in his individual capacity, injunctive relief requiring the SCSO to reopen and properly resource the investigation with personnel trained in vulnerable-victim protocols, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### TENN. CONST. ART. I, § 35; T.C.A. § 40-38-101 ET SEQ.

*Violation of Tennessee Victims' Rights*

### (Against All Defendants)

54. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

55. The Tennessee Constitution and the Tennessee victims' rights statutes guarantee crime victims and their families the right to be informed about the status of investigations and to be treated with dignity and respect.

56. Defendants violated ROGERS's rights under these provisions in the following specific respects: (a) failing to treat ROGERS with the dignity and respect required by T.C.A. § 40-38-102 by abandoning all communication for approximately eighteen months; (b) failing to supply ROGERS with information and updates regarding the investigation as required by T.C.A. § 40-38-103; (c) failing to inform ROGERS of the investigation's status, investigative developments, or the identity of personnel responsible for the investigation, in violation of T.C.A. §§ 40-38-107 and 40-38-113; (d) failing to respond to ROGERS's attempts to provide investigative tips and leads, effectively excluding him from participation in the effort to locate his son; and (e) failing to hold any public communications regarding the investigation after April 2024, leaving ROGERS and the public without any information about S.W.D.R.'s case for more than two years.

57. As a direct result of Defendants' violations of Tennessee's victims' rights protections, ROGERS has been denied information critical to his son's safety and wellbeing, has been

excluded from the investigative process to which he is entitled by constitutional and statutory right, and has suffered severe and ongoing emotional distress from the enforced ignorance of whether his son is alive or dead.

58. Plaintiffs seek all appropriate relief, injunctive relief requiring the SCSO to immediately restore communication and provide ROGERS with a comprehensive update on the investigation, and damages for the harm suffered as a consequence of these violations.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE AND GROSS NEGLIGENCE

### (Against All Defendants)

59. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

60. Defendants owed a duty of care to S.W.D.R. and ROGERS once they undertook to investigate S.W.D.R.'s disappearance to act as a reasonably competent law enforcement officer or agency would when faced with similar facts.

61. The failures alleged herein are not policy-level discretionary choices but operational breakdowns in the execution of an investigation that was already underway: failing to secure a scene, failing to verify an alibi, failing to follow up on tips, and failing to maintain communication with the victim's family are ministerial operational acts, not protected discretionary functions.

62. Once SCSO undertook the investigation of S.W.D.R.'s disappearance, it assumed a duty of reasonable care in conducting that investigation. Tennessee courts recognize that a duty of care arises when a defendant's conduct creates a foreseeable risk of harm to an identifiable plaintiff. The SCSO had direct, documented knowledge of S.W.D.R.'s profound vulnerability, his disabilities, and the known danger in the Proudfoot household. A reasonably competent law enforcement agency, knowing what the SCSO knew, would have:

14

preserved the crime scene; verified PROUDFOOT's alibi independently; investigated the non-functioning surveillance cameras; deployed resources commensurate with the risk; maintained inter-agency coordination with the TBI and FBI; and sustained regular communication with S.W.D.R.'s father throughout the investigation. The SCSO did none of these things.

63. CRADDOCK and CARTER's negligent acts and omissions cumulatively amount to willful, malicious, or grossly negligent conduct. CRADDOCK and CARTER's actions constitute a conscious indifference to the consequences when a reasonable person would have recognized that the conduct was likely to harm another. The conscious eighteen-month abandonment of communication with ROGERS of a missing disabled child, and the decision to allow the investigation to go dormant with no public updates and no follow-up on submitted leads, rises to this standard.

64. Defendants breached their duty through the acts and omissions described herein, which constituted gross negligence and a conscious disregard for S.W.D.R.'s safety and Seth's rights as a parent.

65. As a direct and proximate result of Defendants' negligence and gross negligence, S.W.D.R. remains a missing at-risk child, and ROGERS has suffered substantial, ongoing harm including the loss of his son's companionship and the severe emotional injury of not knowing whether S.W.D.R. is alive or dead.

66. Plaintiffs are entitled to compensatory damages from the governmental entity defendants to the extent permitted by the Tennessee Governmental Tort Liability Act ("TGTLA"), and to compensatory and punitive damages from the individual defendants in their individual capacities for their grossly negligent and willful failures.

15

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

67. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

68. Tennessee recognizes a claim for intentional infliction of emotional distress where the plaintiff proves: (1) the defendant's conduct was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct resulted in serious mental injury to the plaintiff. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1 (Tenn. 2021); *Leach v. Taylor*, 124 S.W.3d 87 (Tenn. 2004).

69. The facts support a finding that Defendants' conduct was reckless and intentional. CARTER consciously ignored ROGERS's agreed-upon meeting and then never contacted him again. CRADDOCK, as the final policymaker with direct supervisory authority, made deliberate choices to allocate a single detective to the investigation, to hold only one press conference, and to permit the investigation to go dormant while a disabled child remained missing. These were not inadvertent omissions, but affirmative choices made with conscious disregard of their effect on ROGERS. Through ROGERS's repeated contact attempts and the very nature of the circumstances, Defendants were on notice that their conduct was causing severe and ongoing emotional harm.

70. Defendants conduct meets and exceeds the outrageousness threshold. Defendants are law enforcement officials with exclusive authority over the only official investigation into S.W.D.R.'s disappearance. Their abuse of that exclusive authority to effectively abandon a profoundly disabled missing child's case, while maintaining a monopoly over the investigation that prevents ROGERS from seeking redress elsewhere, is outrageous. A parent who has been told by detectives they will meet with him, then stood up, then cut off from all

contact for eighteen months while his disabled son remains missing, is not merely experiencing the ordinary difficulties of life. The conduct alleged is beyond what any reasonable person in a civilized society should be required to endure from those entrusted with the duty to find his child.

71. As a direct and proximate result of Defendant's intentional or reckless outrageous conduct, ROGERS has suffered serious mental injury that no reasonable person would be expected to endure: the prolonged, unresolved disappearance of his disabled teenage son, combined with the law enforcement agency responsible for finding that son going completely silent for nearly two years. This is not the transient distress of an ordinary grievance. It is a sustained, open-ended mental anguish, including the inability to grieve, plan, or act, because the whereabouts and fate of his child remain unknown and the agency that could answer that question has chosen silence.

72. This cause of action is asserted against Defendants CRADDOCK and CARTER in their individual capacities, for their personal intentional or reckless outrageous conduct as described herein. Punitive damages are sought against the individual Defendants in their individual capacities.

73. As a direct and proximate result of Defendants' intentional and reckless outrageous conduct, ROGERS has suffered, and continues to suffer, severe emotional distress entitling him to compensatory and punitive damages in amounts to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

74. Plaintiffs incorporate by reference all preceding paragraphs as though set forth herein.

75. Defendants owed ROGERS a duty to exercise reasonable care.

76. Defendants' negligent investigative conduct was directed at ROGERS as the identified biological father of the missing child: CARTER specifically agreed to meet with ROGERS and then abandoned the arrangement, the SCSO held press conferences addressing ROGERS specifically, and the investigation as a whole was conducted with knowledge that ROGERS was the biological father seeking his son.

77. By affirmatively undertaking the investigation and establishing a relationship with ROGERS as a key family contact and source of investigative leads, the SCSO occupied a position of control over information critical to ROGERS's wellbeing and was in the best position to prevent the emotional harm described herein.

78. Defendants breached this duty through the acts and omissions described herein, which constituted gross negligence and conscious disregard for S.W.D.R.'s safety and ROGERS's rights as a parent.

79. Defendants' breach was both the cause in fact and proximate cause of ROGERS's emotional injury: but for Defendants' negligence, ROGERS would not have suffered the injury described, and that injury was a foreseeable result of Defendants' breach under the circumstances alleged.

80. ROGERS's emotional injury meets the serious or severe standard required under Tennessee law, which demands distress of sufficient gravity that it goes beyond what a reasonable person should be expected to endure. ROGERS has endured more than two years of unresolved uncertainty about whether his disabled teenage son is alive or dead, compounded by the knowledge that the agency with exclusive authority to investigate S.W.D.R.'s disappearance has gone silent. This is not ordinary stress or inconvenience, it is a protracted, open-ended psychological wound that a reasonable person should not be required to endure, particularly when it could have been alleviated by the exercise of ordinary care.

81. Plaintiffs will support the seriousness of ROGERS's emotional injury with expert medical or scientific proof, including testimony from qualified healthcare providers who evaluated ROGERS and can opine that his injury is serious or severe and consistent with the negligent conduct alleged.

82. This cause of action is brought against all Defendants. The negligent failures to communicate and to conduct a reasonable investigation are operational, not discretionary, acts falling within an exception to governmental immunity. The individual Defendants are personally liable for their negligent conduct causing foreseeable severe emotional harm.

83. As a direct and proximate result of Defendants' negligence, ROGERS has suffered and continues to suffer serious and severe emotional injury for which he is entitled to compensatory damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

1. Compensatory damages in an amount to be proven at trial but not less than TEN MILLION DOLLARS ($10,000,000.00);

2. Punitive damages against the individual Defendants;

3. Injunctive relief requiring the SCSO to reopen active investigation of S.W.D.R.'s case with adequate resources, establish protocols for missing persons investigations, and implement mandatory communication requirements with victims' families;

4. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

5. Pre-judgment and post-judgment interest; and

6. Such other and further relief as this Court deems just and equitable.

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: July 16, 2026                              DRE, A.P.C.

_____
Darren M. Richie, Esq. (SBN 316116)
*Attorney for Plaintiffs, Seth Rogers and*
*S.W.D.R.*
DRE, A.P.C.
1641 Mallory Lane, Suite 100
Brentwood, TN 37027
(213) 265-7888
Darren@drelaw.com

20

CERTIFICATION OF SERVICE

I certify that Plaintiff's COMPLAINT AND JURY DEMAND has been served upon the following parties and counsel of record by electronic mail, electronic filing, and/pr by depositing a copy thereof in the United States mail, properly addressed and postage-paid.

SERVICE LIST:

SUMNER COUNTY, TENNESSEE
Sumner County Sheriff's Office
117 West Smith Street
Gallatin, TN 37066

SUMNER COUNTY SHERIFF'S OFFICE
117 West Smith Street
Gallatin, TN 37066

SHERIFF ERIC CRADDOCK
117 West Smith Street
Gallatin, TN 37066

DETECTIVE BRANDON CARTER
117 West Smith Street
Gallatin, TN 37066

_____
DARREN M. RICHIE, ESQ.

21